IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DISTRICT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.                          ) | 2:10-cr-377-VEH-PWG |
| ) | |
| JOSHUA PERSON,              ) | |
| ) | |
| DEFENDANT                   ) | |

## ORDER

**I.     INTRODUCTION**

This case was reassigned to the undersigned judge on October 31, 2011. Pending before the Court is the Magistrate Judge's Findings and Recommendation (Doc. 21) as to the Defendant, Joshua Person's, Motion to Suppress. (Doc. 13).[1] Also pending are the Defendant's Objections to Magistrate Judge's Findings and Recommendation. (Doc. 22.)  For the reasons discussed below, the Court will adopt the findings of the Magistrate Judge, accept the recommendation, and overrule the Defendant's objections.

**II.    FACTUAL AND PROCEDURAL HISTORY**

On March 18, 2008, Defendant Joshua Person ("Person") was driving a vehicle on the public roads of the City of Birmingham, Alabama.  A police officer observed

---

[1] The Government filed a Response, doc. 14, and Person filed a Reply, doc. 15.

that Person was the only occupant of the vehicle. The officer further observed Person legally park the vehicle and exit it. The officer then parked his vehicle across the street from Person's vehicle[2] and walked over to Person, who was standing next to his vehicle. The officer told Person that the music coming from Person's vehicle violated the City of Birmingham noise ordinance. Person offered to turn it down. The officer said he was going to write Person a citation. He directed Person to accompany him across the street to the parked police car. Person complied. The officer told Person to sit in the back of the police car. Person complied.

While he was writing the excessive noise citation, the officer asked Person "if there was anything else in the vehicle [that he (the police officer)] needed to know about, any weapons or illegal contraband." Person replied that there was a gun underneath the driver's seat and that the gun belonged to his son. The officer then handcuffed Person for officer safety and the safety of the civilian ride-along who was sitting in the front passenger seat of the police car.

The officer walked across the street, reached under the driver's seat of Person's car, and recovered a loaded pistol. The officer did not look in any other area of the car. The officer walked back to the police car and asked Person if he had a pistol

---

[2] It is legally irrelevant who the owner of the vehicle driven by Person was. The court makes no finding on that fact and refers to the vehicle as Person's merely for ease of reference in distinguishing it from the police officer's vehicle.

permit. Person said he did not. "At that point he was under arrest." The officer then told Person he was in violation of the Alabama Firearms Act. The officer also issued Person a citation for excessive noise.

The time between the beginning of the encounter and Person's statement about the firearm was about two to three minutes. The time between the beginning of the encounter until the officer seized the gun and notified Person that he was under arrest was less than five minutes.

On September 29, 2010, Person was indicted on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). (Doc. 1.) Person has sought to suppress the firearm and the statements he made about it. (Doc. 13.)

Magistrate Judge Paul W. Greene held a suppression hearing on November 22, 2010. At the hearing, the police officer testified as to the facts set out above.[3]

Upon considering the testimony elicited at the hearing and the parties' briefs, the Magistrate Judge entered his findings and recommendations. (Doc. 21.) Specifically, Magistrate Judge Greene found that the Motion to Suppress should be denied. Person filed his objections. (Doc. 22.)

---

[3] Person had also filed a Motion To Produce all Materials Related to the Seizure of the Gun (doc. 14). In that Motion To Produce, Person specifically requested that the court order production of the requested items and statements prior to the suppression hearing. No order was ever entered on this Motion. However, it was not mentioned at the suppression hearing. Therefore, the court terms the Motion To Produce (doc. 14) as **MOOT**.

### III.  STANDARD OF REVIEW

Under 28 U.S.C. § 636 (b)(1)(B), a district court judge "may designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of facts and recommendations for disposition." The magistrate judge's role under this provision extends to motions to suppress in criminal cases. *Id.* Within ten days of being served with copies of a report and recommendation, "any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court." 28 U.S.C. § 636(b)(1). "A [district] judge . . . shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* In making a "*de novo* determination" the Court is not required to conduct a *de novo* evidentiary hearing, rather, the statute permits "whatever reliance a district judge, in the exercise of sound judicial discretion, cho[oses] to place on a magistrate's proposed findings and recommendations." *United States v. Raddatz*, 447 U.S. 667, 677 (1980). Exercising its discretion, the Court elects not to hold an additional evidentiary hearing. The Court has reviewed <u>all</u> materials in the record, including the motions and briefs submitted by the parties, the transcript of the hearing before Magistrate Judge Greene, Magistrate Judge Greene's findings and recommendations, and Person's objections.

## IV.   PERSON'S OBJECTIONS

Person does not object to Magistrate Judge Greene's analysis of *Terry* stops or his determination that a *Terry* analysis is appropriate in this case.  Rather, Person objects to Magistrate Judge Greene's conclusion that, under applicable law, Person was not in custody — triggering Person's *Miranda* rights — until after the statements sought to be suppressed had been made and the gun sought to be suppressed had been secured.  (Doc. 22, pp. 2-3).  Further, Person objects to the Magistrate Judge's determination that the officer did not have to advise Person of his *Miranda* rights before the officer asked him "if there were 'anything illegal' in the vehicle." (Doc. 22, p.3).  Person argues that this question was not permitted because it was not "'reasonably related in scope to the justification' for the *Terry* stop." (*Id.*).  Person also objects to the Magistrate Judge's failure to suppress the gun.  (*Id.*, p.4).  Person argues that Person had to but did not "consent [before the officer could] search or 'recover' the pistol" from Person's car.  (*Id.*).

## V.   ANALYSIS

At the beginning of the hearing, the Magistrate Judge correctly summarized the issues before the Court and the Government's burden: that is, that Person's was challenging a warrantless search and therefore the burden was on the Government to establish that the search fell within one of the exceptions to the Fourth Amendment

warrant requirement.

The Magistrate Judge then found that the officer had probable cause that Person was in violation of a misdemeanor noise ordinance, that because the initial encounter between Person and the officer was on the street it was appropriate to require Person to accompany the officer to the police car while the citation was written, and to tell Person to sit in the back of the police car while the officer wrote the citation. The Magistrate Judge found that none of these actions exceeded the scope of a *Terry* stop.

Although Person has objected to the Magistrate Judge's recommendation that the officer was permitted to ask Person if there was "anything illegal" in Person's car without first advising him of his *Miranda* rights, the court disagrees. As determined by the Magistrate Judge, under controlling Eleventh Circuit law, the questions were permitted during Person's lawful *Terry* stop because the stop was not unreasonable in duration.

While Person accurately sets out the facts of cases relied upon in this recommendation, the difference in the facts of those cases from the facts of this case do not call for a different conclusion: the officer could ask Person if there was "anything illegal" in Person's car. In *United States v. Purcell*, 236 F.3d 1274 (11th Cir. 2001), one of the cases relied on by Magistrate Judge Greene, the Eleventh

Circuit adopted the Fifth Circuit's decisions[4] allowing a police officer to ask "question[s], even on a subject unrelated to the purpose of the [s]top" 236 F.3d at 1279 because

> the question regarding weapons was asked while the officer was still writing out the citation ... [and] [t]hus, the unrelated question did nothing to extend the duration of the initial, valid, seizure. The detention continued to be supported by the facts that justified its initiation. *See* [*United States v. Shabazz*, 993 F.2d 431 (5th Cir. 1993)] at 437. Nor was the detention of an excessively long duration. The total time consumed by the traffic stop, prior to the consent to search, was fourteen minutes. This duration imposed "no significant Fourth Amendment hardship." *See Shabazz*, 993 F.3d at 438; *see also* [*United States v. Hardy*, 855 F.2d 753 (11th Cir. 1988)] at 761 (fifty minute stop not too long). Under these circumstances, the officer's question did not offend the Constitution.

*Purcell*, 236 F.3d at 2380.

Thus, the Eleventh Circuit, like the Fifth Circuit, allows routine questioning unrelated to the purpose of a legitimate *Terry* stop so long as it does not extend the duration of that stop. *United States v. Hernandez*, 418 F.3d 1206 (11th Cir. 2005), also relied on by the Magistrate Judge and attempted to be distinguished by Person, further explicates this point.

> [A]rguments that the Trooper asked questions unrelated to either officer safety, the speeding offense, or processing the citation are not determinative of our evaluation of the constitutionality of the seizure here. We are to look only at the duration of the seizure given all the

---

[4] And rejected the Tenth Circuit's contrary decisions.

<blockquote>circumstances: was it for <u>an unreasonable time?</u> And, of course, a traffic stop will inherently take some time. When <u>an officer</u> is, for instance, looking at a driver's license or waiting for a computer check of registration, he <u>lawfully can at about the same time also ask questions—even questions not strictly related to the traffic stop.</u></blockquote>

*Hernandez*, 418 F.3d at 1209 n. 3 (emphasis supplied).

The Court finds that the encounter between the officer and Person was analogous to a traffic stop and that Magistrate Judge Greene correctly determined that the officer had not finished writing the noise ordinance citation at the time the questions and answers that Person seeks to have suppressed occurred.[5] Because the <u>duration</u> of the encounter was not unreasonable,[6] there was no *Terry* violation. Therefore, the court finds that the Motion to Suppress is due to be denied as to the statement that there was a gun under the driver's seat of the car.

Additionally, the Court agrees that there was no search of the car; the officer merely secured the gun after Person told him about it. Therefore, the court finds that the Motion to Suppress is due to be denied as to the gun.

Further, the court agrees that the question about whether Person had a permit for the gun was investigatory into whether Person's possession was legal or not. Therefore, to the extent that this aspect of the Report and Recommendation was

---

[5] The second question that is the subject of the suppression motion was whether Person had a gun permit; the second answer was no.

[6] Nor does Person argue that the duration was unreasonable.

objected to, the court finds that the Motion to Suppress is due to be denied as to this statement also.

Finally, the court finds that the evidence establishes that Person's detention did not exceed a traffic stop and become custodial — triggering *Miranda* warning requirements — until after the statements had been made and the gun had been secured.

## VI. CONCLUSION

Therefore, in light of the above, the Court **ADOPTS** the findings of the Magistrate Judge and **ACCEPTS** the recommendation. It **OVERRULES** the Defendant's objections to the findings and recommendation. The Motion to Suppress is **DENIED**.

**DONE** and **ORDERED** this the 7th day of November, 2011.

*/s/ Virginia Emerson Hopkins*
**VIRGINIA EMERSON HOPKINS**
United States District Judge